EUROPEAN TANSPA, INC., Plaintiff-Appellant, v. WINFRED SHRADER *et al.*, Defendants-Appellees.

Second District No. 2—92—0428

Opinion filed March 12, 1993.

Edward J. Welch and Richard W. Goeken, both of Dommermuth, Brestal, Cobine & West, Ltd., of Naperville, for appellant.

William E. Hale and Richard L. Lucas, both of Richard L. Lucas & Associates, Ltd., of Addison, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, European Tanspa, Inc., appeals the order of the circuit court which granted the motion of defendants, Winfred and Ethel Shrader, under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) to vacate a default judgment. On appeal, plaintiff contends (1) that the petition is legally deficient in that it is unsupported by affidavit as required by statute; (2) the court erred in finding that defendants pleaded a meritorious defense; and (3) the court abused its discretion in holding that substantial justice required granting the petition. We reverse.

Defendants operated a tanning salon under a franchise agreement with plaintiff. On December 4, 1990, plaintiff filed a complaint for breach of contract in the circuit court of Du Page County. The complaint alleged that defendants had failed to pay certain licensing royalties. The parties settled that suit, No. 90—LM—7622, on May 20, 1991, with the execution of a settlement agreement.

The settlement provided in part that defendants would pay plaintiff $9,000 in complete satisfaction of all outstanding debts, defendants agreed to release all claims and defenses against plaintiff, and both parties would continue to abide by the franchise agreement as modified. Based on this agreement, the court entered an order dismissing the action.

Defendants failed to make the first payment due under the settlement agreement. Plaintiff's attorney, Edward Welch, telephoned defendants' attorney to notify him of the breach. After consulting with his clients, defendants' attorney called Welch back to inform him that defendants would not comply with the settlement agreement.

Welch then sent defendants a certified letter informing them of the default. Ethel Shrader responded with a letter stating that she and her husband were experiencing extreme financial difficulties in operating the business and would probably have to sell their home to keep the business going. The letter also stated defendants' belief that plaintiff had failed to train them properly to run the business. The letter concluded by stating, "Do what you think best."

On September 26, 1991, plaintiff filed the instant action. The complaint contained four counts. Count I sought to enjoin defendants from doing business at their present location or any site within a 10-mile radius; from being affiliated with any competitor of plaintiff for one year and within a 10-mile radius of their current location; and to assign their business telephone number to plaintiff. Count II sought an accounting for all royalty payments allegedly due. Count III sought specific performance of the licensing agreement as well as a preliminary injunction to prohibit defendants from transferring the equipment used in the business. Count IV sought damages of $1,800 for licensing fees allegedly due as of September 1, 1991.

Attached to the complaint and incorporated by reference was a copy of the settlement agreement in 90—LM—7622, but the complaint apparently did not seek a judgment for breach of this agreement.

The record shows that both defendants were served personally with the complaint and summons on October 6, 1991. On November 12, the court entered a default judgment for all the requested relief.

Although defendants had not filed an appearance, Welch sent them a notice of the motion for default judgment.

On November 12, the court passed the case to the end of the call at approximately 10:30 a.m. and, when defendants failed to appear, entered judgment by default for all the relief requested. The judgment does not mention the settlement agreement in No. 90—LM—7622.

Apparently sometime later that day, defendants appeared in courtroom 2011, where the clerk informed them that a default judgment had been entered against them. Defendants were informed that they must move to vacate the default judgment within 30 days.

Joyce Cocogliato, plaintiff's president, and a female companion, attempted to deliver a certified copy of the judgment to defendants' place of business on December 30, 1991. According to Cocogliato's affidavit, Winfred Shrader threatened to kill her, shouted obscenities at her, and attempted to push her and her assistant through a plate-glass window.

Plaintiff filed a motion for a rule to show cause why defendants should not be held in contempt of court for failure to abide by the November 12 judgment. A hearing on the motion was set for January 21, 1992. Defendants appeared at the hearing *pro se*. Ethel Shrader stated that she was in court on November 12. She further stated:

> "It seemed like everybody [*sic*] had been entered against us, so we were waiting for—to see what came about that ***."

The court advised defendants to get a lawyer. Mrs. Shrader protested repeatedly that defendants had no money and could not afford a lawyer. The court responded, "You can't afford not to get a lawyer." The court continued the matter to February 5.

On that date, attorney Richard Lucas represented to the court that he would be filing an appearance for defendants. The court granted defendants 21 days to file a section 2—1401 petition to vacate the default judgment.

Defendants filed their petition on March 5. The petition alleges that defendants attempted to appear on November 12, but "inadvertently failed to arrive in the appropriate courtroom" prior to the case being called. Defendants "diligently sought" counsel but lacked the financial resources to secure counsel at an earlier date. The petition further alleges as follows:

> "5. The Defendants have a meritorious defense to the claims presented in the Complaint, including but not limited to the following:

a. Plaintiffs failed to comply with the licensing agreement, as pled in the complaint, including but not limited to failure to provide training to the Defendants in the operation of the materials, supplies and equipment comprising the European Tan-Spa franchise;

b. Defendants [*sic*] failed to comply with the terms of the settlement agreement, as to inspections, by demanding inspection without reasonable notice, by demanding inspections be carried out by persons specifically identified as not being an authorized agent of Plaintiff for the purpose of inspections;

c. Defendants [*sic*] have failed to comply with the terms of the licensing agreement, and have specifically failed to provide the disclosures required pursuant to the Illinois Franchise Disclosure Act of 1987.

d. Defendants [*sic*] have failed to properly account for monies paid to it by Defendants, including a franchise fee of $70,000.00, for which various materials, supplies and manuals have not been delivered, thereby preventing Defendants from performing and operating their franchise, and Defendants [*sic*] have failed to properly credit Defendants with such payments.

e. Plaintiff has engaged in violations of the antitrust laws of the United States and the State of Illinois, by requiring Defendants to purchase equipment and supplies directly from suppliers selected by Plaintiff."

Defendants did not attach affidavits to the petition, but the petition itself was verified. Plaintiff filed a response to the petition as well as various affidavits.

On March 12, the court conducted a hearing on the motion, which consisted solely of argument by the parties' attorneys. The court recognized, and plaintiff's counsel agreed, that the complaint went beyond mere enforcement of the prior judgment. The court reiterated that the former judgment would be *res judicata* regarding any defense which could have been raised in that proceeding. The court nevertheless granted defendants' petition and vacated the November 12 default judgment. The court stated that "justice requires" vacation of the default judgment. Plaintiff filed a timely notice of appeal.

■■ Section 2—1401 provides a comprehensive statutory procedure by which final orders, judgments and decrees may be vacated more than 30 days after their entry. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220.) To be entitled to such relief, a petitioner must affirmatively set forth specific factual allegations demonstrating (1) the existence of a meritorious

claim or defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition. (*Smith*, 114 Ill. 2d at 221; *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714, 717.) Whether a section 2—1401 petition should be granted lies within the sound discretion of the trial court, and, thus, a reviewing court is justified in disturbing the trial court's judgment only if it finds that court abused its discretion. *Smith*, 114 Ill. 2d at 221.

In the instant case, the court abused its discretion because defendants completely failed to establish due diligence. The record reveals that defendants received notice of the November 12 hearing, yet failed to arrive at the courtroom until sometime after 10:30 a.m. At that time, they were told that they would need to vacate the judgment within 30 days. Yet they admittedly waited more than 60 days to "see what came about."

Even after appearing at the January 21 hearing on plaintiff's petition for rule to show cause, defendants did nothing for approximately 40 more days, when they filed their motion to vacate on March 5. While the petition alleges in conclusional fashion that defendants were unable to afford counsel, there are no facts to support this conclusion. Moreover, defendants do not explain how they were suddenly able to afford counsel who appeared on their behalf on February 5. In summary, the record reveals that defendants were served in the instant action on October 6, 1991, and were at all times made aware of the status of the proceedings, yet failed to take any action whatsoever until appearing at the January 21 hearing. When informed of the default judgment in person by plaintiff's agent, defendants' response was to assault the agent. They did not file an appearance until approximately six weeks after that when they filed the section 2—1401 petition.

■ A section 2—1401 petitioner must show that, through no fault or negligence of his own, an error of fact or the existence of a valid defense was not made to appear to the trial court. (*Smith*, 114 Ill. 2d at 222; *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505.) Relief under section 2—1401 is available only to those who diligently pursue their legal defenses in court, not to those who " 'disregard these procedures on the gamble that better results can be obtained through other procedures or at a cheaper cost.' " (*Smith*, 114 Ill. 2d at 224, quoting *Abbell v. Munfield* (1979), 76 Ill. App. 3d 384, 388.) In short, this section cannot be used to relieve a party of his own negligence. (*Mercantile All-In-One Loans, Inc. v. Menna* (1978), 63 Ill. App. 3d 931, 937.) The record shows that the default judgment here was the

result of defendants' indifference to the legal process, not an excusable mistake.

Defendants contend, however, that a section 2—1401 petition invokes the court's equitable powers and that where justice and good conscience require it, a default judgment may be vacated even in the absence of defendants' due diligence, citing *Bonanza International, Inc. v. Mar-Fil, Inc.* (1984), 128 Ill. App. 3d 714. Courts have on occasion vacated default judgments in the absence of a showing of due diligence. However, in each case there was evidence of fraudulent conduct by the plaintiff in procuring or concealing the judgment, or other unusual circumstances which made enforcement of the judgment unjust. See *Halle v. Robertson* (1991), 219 Ill. App. 3d 564; *Bonanza International*, 128 Ill. App. 3d at 719-20.

No such extraordinary circumstances exist here. The record shows that plaintiff kept defendants informed of the status of the case, even though defendants had not filed an appearance and were not technically entitled to notice. Although, strictly speaking, plaintiff did not seek to enforce the judgment for more than 30 days after it was entered, it is undisputed that defendants had actual notice of the judgment the day it was entered. Rather than attempt to vacate the judgment at that time, defendants elected to "see what comes about." Thus, it is apparent that "defendants' dilemma is the result of their own negligence and attitude of nonresponse." *Hogan & Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 222; see also *Mid-America Federal Savings & Loan Association v. Liberty Bank* (1990), 204 Ill. App. 3d 995, 1001 (defendant had notice of default judgment within 30 days, but "elected" to pursue separate action).

Since defendants failed to establish due diligence and there is no conduct by plaintiff which would make enforcement of the judgment unfair or unjust, the court abused its discretion in granting defendants' section 2—1401 petition.

The judgment of the circuit court is reversed.

Reversed.

INGLIS, P.J., and QUETSCH, J., concur.