February 4, 1999

NO. 4-98-0190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

COMMUNITY 1ST CREDIT UNION ) Appeal from

Plaintiff-Appellee and Cross- ) Circuit Court of

Appellant, ) Coles County

v. ) No. 96LM134

JOHN C. BOSWELL, )

Defendant, )

and ) 

AMPAD CORPORATION, a division of )

American Pad and Paper Corporation, ) Honorable

Defendant-Appellant and ) Dale A. Cini,

Cross-Appellee. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Ampad Corporation, a division of American Pad and Paper Company (Ampad), a garnishee against whom conditional judgment was entered and affirmed, appeals the denial of its section 2-

1401 (735 ILCS 5/2-1401 (West 1996)) petition.  We vacate the default judg­ment against Ampad and remand for further proceed­

ings.

In March 1996, plaintiff Community 1st Credit Union (Community) sued John Boswell to recover on an overdue promissory note, interest, and attorney fees.  Community was awarded a judgment in the amount of $9,563.03 plus attorney fees in the amount of $127.50.  Boswell did not pay the judgment and Communi­

ty sought to garnish his wages from his employer Ampad.  In August 1996, Communi­ty filed a notice of wage deduction and served "Ampad Corpora­tion" with summons in Mattoon, Illinois, which summons indi­cat­ed that Ampad was to answer Community's interroga­tories and have the answers filed with the Coles County circuit clerk's office on or before Decem­ber 9, 1996.  

It is uncertain whether Ampad filed the answers to the interrogatories with the clerk's office.  The docket entry indi­

cates Ampad filed the answers on November 19, 1996.  However, the documents turned up missing.  Ampad claims it filed the answers and the clerk's office lost them.  Community claims the answers were never filed and the docket entry was the result of a cleri­

cal mistake.  Ampad contends the answers to the interrogato­ries were relevant because they established that Boswell already had his wages garnished for child support that took him to the federal limit of 25% of his disposable earnings.  Therefore, Ampad argues no wages were left for Community to garnish.

On January 27, 1997, with no answers on file, Community filed a motion for conditional judgment, alleging Ampad failed to answer the interrogatories and requesting the court to enter conditional judgment against Ampad in the amount of $10,075.94.  The hearing on the motion was set for February 28, 1997.

Ampad became aware the interrogatory answers were missing sometime in mid-February.  Dale Dixon, a payroll manager for Ampad in Dallas, Texas, claims she called the Coles County circuit clerk's office and spoke with an unnamed employee who informed her the answers to the interrogatories had been re­ceived but had been lost.  Despite knowing the answers could not be found, Ampad did not refile the an­swers, respond to Community's motion for condi­tional judgment, or appear at the February 28 hearing.  The trial court ordered conditional judg­ment against Ampad and set a hearing to confirm the condi­tional judgment for April 4.

On March 3, 1997, the court received correspondence in the mail from Dixon.  The letter, dated Febru­ary 27, 1997,  at­

tempted to summarize the answers to Community's inter­rogatories and stated that John Boswell already had two orders of withhold­

ing against his weekly wages that took him to the federal limit for such deductions and no wages were left to be garnished.  The letter was not signed under oath and did not provide all the information that was requested in the interrogatories.  Ampad contends it sent a letter, instead of answers to the interrogato­

ries, because Ampad's office copy of the interrogatories had been lost due to a recent office move.  Ampad's letter was filed with the court, but there is no indication that a copy was sent to Community. 

On April 4, 1997, Ampad failed to appear at the hearing to confirm conditional judgment.  The trial court found Ampad in default and confirmed the conditional judgment in Community's favor.  The trial court made no reference to Ampad's February 27 letter.

In May 1997, Ampad wrote a letter to Vicki Kirkpatrick at the circuit clerk's office and requested a search for the missing interrogatories.  After an extensive search, Kirkpatrick wrote back that the answers could not be found and that "perhaps the docket entry made November 19, 1996[,] in [No.] 96-LM-134 stating 'Interrogatories filed./tid.' was made in error."  Kirkpatrick also stated that the employee who made the docket entry no longer worked for the clerk's office. 

In May 1997, Ampad filed a special and limited appear­

ance, arguing that its proper name was "Ampad Corporation, a Division of American Pad and Paper Company," not "Ampad Corpora­

tion."  Therefore, Ampad argued, the judgment rendered against "Ampad Corporation" was void and should be vacated.  Community responded with a motion to correct misnomer or in the alternative to deny the relief requested.  The trial court granted Communi­

ty's motion to correct misnomer and rejected Ampad's argu­ment that it lacked jurisdiction.

In November 1997, Ampad filed a section 2-1401 motion (735 ILCS 5/2-1401 (West 1996)) to vacate the April 1997 order con­firm­ing condi­tion­al judg­ment against Ampad.  Ampad contended no funds were avail­able for Community to garnish.  Ampad argued it provided this information in the answers to Community's interrog­atories but the clerk's office lost the answers.  Also, the March 3, 1997, letter Ampad filed with the court indicated no funds were available for Community to garnish.  

Community responded with an affidavit from Nancy Webb, an assistant to Community's counsel.  Webb claimed she was personally familiar with Community's efforts to obtain answers to the interrogatories.  Her affidavit chronicled conversations she had with Ampad and the clerk's office.  She claimed she spoke with Brian at the clerk's office over the telephone in mid-

February 1997.  He told her the answers were on file and he would mail a copy of the answers to Webb.  Webb received the answers, but they were not for this case.  Webb spoke with Brian again over the telephone, and he informed her the answers he sent her had been misfiled and there were in fact no answers for this case.

Ampad filed a motion to strike Webb's affidavit.  Ampad complained the affidavit contained conclusions instead of facts.  Also, Ampad argued that the affidavit made repeated references to conversations with Ampad but did not identify with whom Webb spoke.  

The trial court granted, in part, Ampad's motion to strike Webb's affidavit.  The portions of the affidavit describ­

ing conversations with unnamed individuals were stricken.  The court also struck the paragraph that stated the answers received by the circuit clerk's office had nothing to do with Boswell or Ampad, on the grounds that such a statement was an unsubstantiat­

ed conclusion.

Nevertheless, the trial court denied Ampad's motion to vacate judgment.  The court found Ampad failed to demonstrate due diligence by not appearing at the hearings for conditional judgment and by not answering the interrogatories properly. 

Ampad appeals, arguing the trial court erred when it denied Ampad's motion to vacate.  Community cross-appeals, arguing the trial court should not have stricken from the record portions of the Webb affidavit.  We reject that claim.  Even assuming the issues in this case could be decided on the basis of affidavits, Webb had no firsthand knowledge of whether the answers had been filed in the clerk's office.

Section 2-1401 of the Code of Civil Procedure provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated more than 30 days after their entry.  735 ILCS 5/2-1401 (West 1996).  To obtain relief under the section, the petitioner must show the following by a prepon­der­ance of the evidence:  (1) the existence of a meritori­

ous claim or de­fense, (2) due diligence in defending the original action in the trial court, and (3) due diligence in presenting the peti­tion.  
Ameri­can Ambassador Casualty Co. v. Jackson
, 295 Ill. App. 3d 485, 489, 692 N.E.2d 717, 720 (1998).  Whether a section 2-1401 petition should be granted lies within the sound discre­tion of the trial court and will be reversed only upon an abuse of discretion.  
European Tanspa, Inc. v. Shrader
, 242 Ill. App. 3d 103, 107, 610 N.E.2d 172, 175 (1993).

Ampad's section 2-1401 motion presented a meritorious defense.  Ampad's contention that Boswell already had two wage deductions against him and no wages were left to garnish, if true, would present a meritorious defense to the action against Ampad.  However, to succeed on a section 2-1401 motion the peti­

tioner must have shown due diligence in presenting his claim during the original action.  Relief under section 2-1401 is available only to those who diligently pursue their legal defens­

es in court, not to those who disregard these procedures and gamble that better results can be obtained through other proce­

dures at a cheaper cost.  
European Tanspa, Inc.
, 242 Ill. App. 3d at 107, 610 N.E.2d at 176.  

Ampad did not show due diligence in presenting its defense during the original action.  We recognize Ampad may have submitted the answers to the interrogatories on November 19, 1996, as indicated by the docket entry.  However, for some reason the documents never appeared.  Ampad knew the documents were missing because it was served with a motion for conditional judgment in late January 1997 and was informed by the circuit clerk's office in mid-February that the documents were missing.  At this point, Ampad knew no answers were on file and the vital information that Boswell already had two wage deductions was not in the record.  Despite this knowledge, Ampad failed to refile anything before the February 28 hearing and failed to appear at the hearing.  Accordingly, the trial court awarded judgment in Community's favor and scheduled a hearing to confirm conditional judgment.

At that point, Ampad still could have refiled the interrogatories or notified the court they had been lost and more time was needed.  Instead, Ampad sent to the court the informal February 27 letter that summarized Boswell's income and stated he cur­rent­ly had two separate wage deductions that took him to the federal limit.  Ampad attached copies of the two deduction orders to the letter.  The letter did not assert that Ampad had filed the answers to the interrogatories in November or that the clerk's office had lost them.  The letter was signed, but not sworn, by Dale Dixon.  The letter was filed with the court.

Ampad's February 27 letter was legally insufficient.  Section 12-808(c) of the Illinois Wage Deduction Act (Act) directs that the employer shall file:

"a written answer under oath to the interrog­

atories, setting forth the amount due as wages to the judgment debtor ***, the amount of non-exempt wages held by the employer subject to order of court, and a summary of the computation used to determine the amount of non-exempt wages."  735 ILCS 5/12-808(c) (West 1996).

Ampad's letter was not under oath and it did not provide all of the required information.  In addition, Ampad again failed to appear at the hearing to confirm conditional judgment.  The trial court was faced with a defendant who, without explanation, never appeared before the court and who showed indifference to the Act's required procedures.  For whatever the reason, Ampad did not act diligently in presenting its claim to the trial court in the original action.

A petitioner's lack of due diligence may be excused under extraordinary circumstances.  
American Ambassador Casualty Co.
, 295 Ill. App. 3d at 489, 692 N.E.2d at 720.  "The trend in Illinois is to relax the due diligence standard where necessary to prevent the unjust entry of default judgments and to effect substantial justice."  
Enclosures, Inc. v. American Pay Telephone Corp.
, 287 Ill. App. 3d 900, 902, 679 N.E.2d 432, 434 (1997).  When determining whether petitioner's lack of diligence was the result of an excusable mistake, we consider all the circumstances surrounding the entry of the judgment, including the litigants' conduct.  
American Ambassador Casualty Co.
, 295 Ill. App. 3d at 490, 692 N.E.2d at 721.

We conclude the unusual circumstances of this case dictate that we vacate the judgment.  We are concerned Ampad may in fact have filed the answers and the clerk's office lost them.  However, it does not follow reason that the clerk's office would indicate "interrogatories filed" in the docket if none were actually filed.  With or without Webb and Dixon's affidavits, we conclude Ampad should receive the benefit of the doubt that the answers were filed and lost, due to the docket entry.

Ampad did not act diligently after it became aware the answers were missing.  However, we conclude Ampad's February 27 letter represented a good-faith effort to answer the interroga­to­

ries.  Even though the letter did not strictly comply with the Act, it provided notice to Community and the court that Boswell already had two wage deductions.  Ampad's 
pro
 
se
 status does not excuse its behavior; however, it may help to explain why it failed to comply with procedures or appear at the hearings.  In light of the unusual circumstances, including the mysterious missing interrog­atories and Ampad's letter that informed the court of Boswell's wage deductions, we conclude the due dili­gence stan­dard should be relaxed.  In order to effect sub­stantial justice, the default judgment against Ampad should be vacated and the case should be remanded for further proceedings.

Vacated and remanded.

McCULLOUGH and GARMAN, JJ., concur.