# Illinois Official Reports

## Appellate Court

---

**KNM Holdings, Inc. v. James, 2016 IL App (1st) 143008**

---

| | |
|---|---|
| Appellate Court Caption | KNM HOLDINGS, INC., as Assignee of Building Maintenance Systems, Inc., Plaintiff-Appellee, v. DAVID A. JAMES; PAMELA S. STANISH; JAMES SOLUTIONS, INC.; ALL ABOUT SNOW AND MULCH, INC.; and 1817 EPPING PLACE, SCHAUMBURG, ILLINOIS, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3008 |
| Filed | August 9, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-CH-37329, 08-L-51015 cons.; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Frank J. Andreou, of Andreou & Casson, Ltd., of Chicago, for appellants.<br><br>No brief filed for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    Intentionally ignoring or flouting numerous discovery orders can lead to the entry of severe sanctions, including a default judgment. Here, repeated failures to comply with discovery ultimately led the trial court to enter an order of default judgment against defendants in the amount of about $1.2 million. Not until nearly two years later did defendants seek to vacate the default judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)). That petition, however, was dismissed on the grounds defendants did not exercise due diligence in the underlying proceeding or in filing the section 2-1401 petition.

¶ 2    Defendants appeal, arguing (i) the default judgment was not an appropriate sanction for their failure to comply with the court's discovery orders; (ii) their failure to exercise due diligence was their attorney's fault; and (iii) at minimum, they should be allowed to challenge the award of damages.

¶ 3    According to an ancient maxim, the law helps those who are watchful and not those that are sleepy, negligent, or (we add) derelict in regard to discovery. For over two years, defendants repeatedly failed to comply with discovery requests. Then, after learning of the default judgment, they waited nearly another two years before filing a motion to vacate. Defendants were responsible for following their case's progress, and any alleged misconduct by their attorney was not a reasonable excuse for a lack of due diligence in the original action or in filing the section 2-1401 petition. We affirm.

¶ 4                                        BACKGROUND

¶ 5    In September 2008, David James sued his former employer, Building Maintenance Systems, Inc. (BMS), alleging wage violations and conversion of property. A few weeks later, BMS sued James, alleging he breached his fiduciary duties by forming competing companies that diverted business away from BMS and used BMS property and employees for his personal use. The complaint also named James's wife, two of his companies, and his residence as defendants. (BMS employee, Ed Jurczak, also named as a defendant, is not a party to this appeal.) The cases were consolidated, and the parties began discovery proceedings.

¶ 6    On November 18, 2009, the circuit court ordered that written discovery be completed by February 22, 2010. Defendants did not comply. On February 25, 2010, the circuit court entered an agreed order extending the cut-off date for written discovery until May 24, 2010. Discovery was again continued. On June 22, 2010, the circuit court ordered defendants to respond to outstanding discovery by July 20, 2010. Nearly a month later, on August 17, 2010, defendants filed a "joint response" to the document requests. The circuit court deemed this response inadequate because it (i) was a group response rather than individual responses for each defendant, (ii) was not properly labeled, (iii) did not identify which requests the documents corresponded to, and (iv) failed to provide substantive information. On September 9, 2010, the circuit court ordered defendants to individually answer the interrogatories and document production requests by September 30, 2010, and to hold a conference under Illinois Supreme Court Rule 201(k) (eff. July 1, 2002) if outstanding discovery issues remained.

¶ 7    On October 5, 2010, after the court-ordered deadline, BMS received revised responses to its document requests. The responses, identical to those provided in the August 17, 2010, "joint response," consisted of multiple copies with different titles to account for each defendant. On

October 25, 2010, the court again ordered the parties to have a Rule 201(k) conference. The Rule 201(k) conference was never held.

¶ 8        In November 2010, BMS filed a motion for sanctions under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) against defendants for failing to comply with the circuit court's September 9, 2010, order regarding their discovery requests and its order to hold a Rule 201(k) conference. BMS asked the circuit court to sanction defendants by striking James's claims and defendants' affirmative defenses, entering a default judgment, and awarding attorney fees and costs. On the same day, defendants' attorney withdrew, and defendants were given three weeks to retain new counsel. Meanwhile, the motion for sanctions was continued.

¶ 9        Defendants' new attorney appeared, and at the next status hearing on January 14, 2011, the circuit court ordered defendants to correct the deficiencies in the document production and submit the additional responsive documents by February 11, 2011. The court also gave defendants until February 11, 2011, to respond to BMS's motion for sanctions and set the matter for a hearing.

¶ 10        On March 25, 2011, after a hearing of BMS's motion for sanctions, the circuit court awarded BMS attorney fees but denied its request for default judgment. The court stated that "[d]ismissal of a cause of action or sanction which result in a default should only be employed when it appears that all other enforcement efforts of the court have failed to advance the litigation. *** Furthermore, dismissal of a cause of action for failure to comply with court orders is only justified when the dilatory party has shown a deliberate and contumacious disregard for the court's authority." The court concluded that "[d]efendants have not shown a deliberate and contumacious disregard for the court's authority thus far." The court ordered defendants to comply with all outstanding discovery requests within 14 days and warned that their failure to do so "will warrant additional sanctions."

¶ 11        Despite the admonition, defendants again failed to comply with BMS's discovery requests, and on May 17, 2011, BMS filed another motion for sanctions. The motion stated that despite the circuit court's March 25, 2011, order requiring defendants to produce outstanding discovery by April 12, 2011, defendants had not produced the documents or communicated with BMS. The motion sought dismissal of James's counterclaims with prejudice, dismissal of defendants' affirmative defenses, and the entry of a default order. BMS also asked the court to set a date for prove-up of its damages, as well as a hearing on its request for attorney fees and costs.

¶ 12        On May 25, 2011, the circuit court set a briefing schedule on BMS's petition for attorney fees and gave defendants 21 more days to comply with its March 25, 2011, order. The court warned that "[f]ailure to comply *will* result in [the] court ordering full sanctions against defendants" (emphasis added), as BMS had requested. On June 15, 2011, defendants filed a motion to extend by an additional week the time to comply with the March 25, 2011, order because their attorney had been on trial or involved in settlement agreements in several cases and had been dislocated for several weeks due to a fire in his office building.

¶ 13        In July 2011, after a hearing, the circuit court denied defendants' motion to extend the time to respond to discovery and granted BMS's request for sanctions for defendants' discovery violations. The court dismissed James's counterclaims with prejudice, dismissed defendants' affirmative defenses, entered a default order against all defendants, granted BMS leave to provide expert testimony in the prove-up of its damages, and granted BMS attorney fees and

costs in bringing the motion for sanctions. A couple months later the circuit court awarded BMS attorney fees.

¶ 14    On April 23, 2012, the court held a hearing for BMS to prove up its damages by affidavit of an expert witness. Neither defendants nor their counsel appeared. After the hearing, the court entered judgment in BMS's favor against Pamela Stanish for $485,218.02 and against David A. James for $706,919.02. (The court also entered a $425,279.76 judgment against Ed Jurczak.) On May 23, 2012, defendants' attorney filed a motion to vacate the default judgment but neglected to present the motion to the court through a notice of motion. BMS thereafter assigned the judgment to KNM Holdings, Inc. (KNM), which immediately began citation to discover assets proceedings.

¶ 15    Nearly two years elapsed before defendants filed a petition to vacate the circuit court's April 23, 2012, order under section 2-1401(a) of the Code. 735 ILCS 5/2-1401(a) (West 2014). On May 27, 2014, KNM, as assignee of BMS, filed a motion to dismiss the section 2-1401 petition under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2014). On August 11, 2015, after a hearing, the court granted KNM's motion to dismiss, with prejudice, under section 2-615 of the Code. 735 ILCS 5/2-615 (West 2014).

¶ 16                                   ANALYSIS

¶ 17    As a preliminary matter, we address the standard of review in a section 2-1401 proceeding. In *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986), our supreme court held that a reviewing court may disturb a circuit court's ruling on a section 2-1401 petition only if it finds the court abused its discretion. In *People v. Vincent*, 226 Ill. 2d 1, 18 (2007), however, the supreme court applied a *de novo* standard of review. The supreme court reconciled these two cases in *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 47-51. There it held, when the section 2-1401 petition involves purely legal questions, a *de novo* standard of review is to be employed, and when the petition involves a fact-dependent challenge to a final judgment, the abuse of discretion standard is appropriate. Because defendants' arguments involve a fact-dependent challenge, we apply an abuse of discretion standard.

¶ 18    Defendants devote a significant portion of their brief addressing whether a default judgment was an appropriate sanction for their failure to comply with the court's discovery orders in light of this court's recent holding in *Locasto v. City of Chicago*, 2014 IL App (1st) 113576. But, the issue before us is not the appropriateness of the circuit's sanction but, rather, whether defendants acted diligently in the underlying case and in bringing the section 2-1401 petition. Thus, we do not need to address *Locasto* or the sanction. (It should be noted that plaintiff did not file a brief in opposition.)

¶ 19    A petition under section 2-1401, which provides relief from final orders and judgments more than 30 days after their entry, must be supported by affidavit or other appropriate showing as to matters not of the record and can be filed no later than 2 years after the entry of the contested order or judgment. 735 ILCS 5/2-1401(b), (c) (West 2014). To obtain relief under section 2-1401, petitioner needs to set forth specific facts showing (1) the existence of a meritorious defense, (2) due diligence in presenting this defense or claim that would have precluded the judgment, and (3) due diligence in filing the section 2-1401 petition for relief. *Warren County*, 2015 IL 117783, ¶ 51. The allegations of a section 2-1401 petition must be established by a preponderance of the evidence. *Smith*, 114 Ill. 2d at 223.

¶ 20    Defendants assert they have a meritorious defense to BMS's claims and that those defenses were spelled out in their section 2-1401 petition. But, the circuit court premised its dismissal on its finding that defendants did not exercise due diligence. Our inquiry on review, therefore, involves the issue of defendant's diligence and whether the circuit court erred in finding that their conduct did not constitute due diligence.

¶ 21    "[S]ection 2-1401 does not afford a litigant a remedy whereby [the litigant] may be relieved of the consequences of his [or her] own mistake or negligence ***." *Smith*, 114 Ill. 2d at 222. "[T]he petitioner must show that [the litigant's] failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he [or she] acted reasonably, and not negligently, when he [or she] failed to initially resist the judgment." *Id.* Defendants assert in their section 2-1401 petition and affidavits that they were unaware of any discovery issues because "[a]t no time were we told that we were not in compliance with discovery and we thought we had turned over all documents that were necessary to respond to discovery."

¶ 22    Generally, litigants are bound by the mistakes or negligence of their counsel. *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005). A litigant has to follow the progress of his or her case, and a section 2-1401 petition will not relieve a litigant of the consequences of an attorney's negligence. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 105 (2006). Thus, defendants are bound by their attorney's actions; section 2-1401 does not provide a vessel for their rescue.

¶ 23    On March 25, 2011, the circuit court granted BMS's first motion for sanctions and awarded BMS attorney fees. Despite this sanction, for more than a year and following numerous continuances, defendants continued to be obstructive. Then, in April 2012, the default judgment was entered. Even if, as defendants contend, their attorney kept them uninformed, it was incumbent on them to be aware of what was happening in their case, and they cannot rely on any neglect by their attorney as an excuse for failing to exercise due diligence.

¶ 24    As for their diligence in bringing the section 2-1401 petition, the default judgment was entered on April 23, 2012. Their attorney filed a motion to vacate on May 23, 2012, but did not properly present the motion to the circuit court. Defendants contend they did not find out about the default judgment until their attorney informed them of it in November 2012. (They also make the conflicting and confusing statement that they did not learn about the default judgment until they hired new lawyers to represent them in filing their section 2-1401 petition to vacate the default judgment.) But, even after learning of the default judgment in November 2012, defendants waited another 17 months to move to vacate the judgment. They took no action after their attorney informed them of the default. They took no action when KNM commenced citation to discover assets proceedings in November 2012, seeking to recover the $1.2 million judgment. Instead, they waited until April 21, 2014, almost exactly two years from the date the default judgment was entered, to file a petition to vacate. This does not manifest due diligence.

¶ 25    Defendants contend they followed their case closely and contacted their lawyer to find out why a default judgment was entered but did not get an answer. They note that their attorney filed a motion to vacate on May 23, 2012, 30 days after the default judgment was entered but failed to properly file a notice of motion, so that it could be heard by the circuit court. They also assert that their attorney told them falsely, as it turned out, that a petition to vacate was filed in February 2014 and that when they requested a copy, the lawyer did not respond. They contend

they should not be deprived of an opportunity to present a defense because of their attorney's mistake in filing the first petition to vacate or because their attorney lied to them when they inquired about whether a petition had been filed.

¶ 26 As already noted, attorney conduct does not justify relaxing due diligence requirements. Defendants have a responsibility to follow their case, and if, as defendants assert, they were following their case closely, they would have been aware that no proper efforts to vacate the November 2012 default judgment had been taken. As they acknowledge, after the judgment was entered, their attorney appeared in numerous postjudgment citation matters. Given that they were aware of plaintiff's efforts to collect on the judgment, it was incumbent on defendants not to dawdle for nearly two years before filing a petition to vacate that judgment.

¶ 27 Nevertheless, defendants argue that equitable considerations require relaxing the diligence requirements. Under the circumstances, we disagree. In ruling on a fact-based challenge to a default judgment presented in a section 2-1401 petition, in limited situations, a circuit court may take equitable considerations into account and relax the due diligence requirement. *Warren County*, 2015 IL 117783, ¶ 51; *Smith*, 114 Ill. 2d at 225. But, the cases in which this occurs involve evidence of fraudulent conduct on the part of the plaintiff in procuring or concealing the judgment or other unusual circumstances that make enforcement of the judgment unjust. *European Tanspa, Inc. v. Shrader*, 242 Ill. App. 3d 103, 108 (1993).

¶ 28 Defendants have not alleged that BMS, their assignee KNM, or any opposing counsel engaged in fraudulent conduct in procuring or concealing the default judgment. And no evidence shows that BMS, KNM, or their attorneys hindered or prevented defendants from presenting a defense to the underlying action. Consequently, nothing in the record before us would, on equitable grounds, justify relaxing the diligence required of defendants.

¶ 29 Lastly, defendants assert they should be permitted to challenge the damages award, contending that BMS acknowledged that their damages were about $200,000 rather than the nearly $1.2 million the circuit court awarded. This contention is based on a "Notice of Assignment for the Benefit of Creditors," which was an exhibit to defendant's section 2-1401 petition. Aside from the fact that this document is hearsay, defendants had the opportunity to present evidence regarding plaintiff's damages at the prove-up hearing and failed to appear. They also failed to act diligently to seek relief from the damages award and cannot now be heard to contest the amount. *Wilson v. Teloptic Cable Construction Co.*, 314 Ill. App. 3d 107, 113 (2000) (refusal to vacate default judgment did not deprive defendant notice and opportunity to be heard, where defendant was aware of entry of default order and prove-up hearing date months earlier but took no action to refile initial motion to vacate default order until seven months after entry of judgment).

¶ 30 Affirmed.